**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **FLORENCE BRASS** | **CASE NO. 3:22-CV-06146** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WAL-MART LOUISIANA L L C** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 24] filed by Defendant, Wal-Mart Louisiana, LLC ("Wal-Mart" or "Defendant"). Plaintiff, Florence Brass ("Brass" or "Plaintiff") filed Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Doc. No. 28], to which Wal-Mart filed a Reply [Doc. No. 29],

For the reasons set forth herein, Wal-Mart's Motion for Summary Judgment is **GRANTED**.

### I.   FACTS AND PROCEDURAL BACKGROUND

This case arises out of a slip-and-fall incident on September 18, 2021, in the Wal-Mart store on Louisville Avenue in Monroe, Louisiana ("the store").[1] Brass was shopping on the beverage aisle and needed assistance to reach an item from a shelf she could not reach.[2] Brass claims she was trying to get the attention of a nearby Wal-Mart employee and tripped and fell on a large piece of unsecured cardboard in the middle of the aisle.[3] She testified that her foot became caught between the edge of the cardboard and floor, causing her to fall forward.[4]

---

[1] [Doc. No. 24-1, p. 1]; [Doc. No. 28, p. 1].
[2] [Doc. No. 28-1, Deposition of Florence Brass, p. 22, 19-25, p. 23, 1-4].
[3] [Doc. No. 28-1, Deposition of Florence Brass, p. 22, 19-25, p. 23, 1-4].
[4] [Doc. No. 28-1, Deposition of Florence Brass, p. 22, 19-25, p. 23, 1-4]; [Doc. No. 28-1, Deposition of Florence Brass, p. 27, 9-14].

The Wal-Mart associate was not on the beverage aisle prior to Brass falling.[5] After Brass fell, Kurt Farlee ("Farlee") found Brass with cardboard underneath her.[6] Farlee and an unidentified customer helped Brass get back up on her feet.[7] Brass alleges that an employee moved the cardboard off the floor and placed it on a shelf.[8] Wal-Mart investigated the accident, filled out an internal Customer Incident Report, and took photographs of the area where Brass fell.[9] These photos demonstrate the floor had clear cosmetic damage.[10] Brass believes the cardboard was placed on the aisle to cover a depression in the floor.[11] Brass also asserts that the cardboard she allegedly tripped on can be seen in the provided photographs.[12]

Brass testified that other individuals were on the aisle with her,[13] but none of the alleged individuals have been identified, deposed, or otherwise provided any testimony related to this incident. Brass further testified that she did not know how long the cardboard was on the floor before her fall.[14] Nor did Brass know what caused the cardboard to be present in the area.[15] In its Motion, Wal-Mart maintains that Brass cannot prove Wal-Mart had actual or constructive notice of the alleged damage-causing condition.[16]

The issues have been briefed, and the Court is prepared to rule.

---

[5] [Doc. No. 24-1, p. 2]; [Doc. No. 28-1, Deposition of Florence Brass, p. 23, 24-25, p. 24, 1-11].
[6] [Doc. No. 28-3, p. 3].
[7] [Doc. No. 28-3, p. 3].
[8] [Doc. No. 28-1, Deposition of Florence Brass, p. 25, 12-23].
[9] [Doc. No. 28, p. 1-2]; [Doc. No. 28-3, p. 2-4]; [Doc. No. 28-3, p. 6-10].
[10] [Doc. No. 28-3, p. 6-10].
[11] [Doc. No. 28, p. 1]; [Doc. No. 28-1, Deposition of Florence Brass, p. 29, 10-15].
[12] [Doc. No. 28, p. 2].
[13] [Doc. No. 28-1, Deposition of Florence Brass, p. 22, 1-16].
[14] [Doc. No. 28-1, Deposition of Florence Brass, p. 30, 19-22].
[15] [Doc. No. 28-1, Deposition of Florence Brass, p. 30, 23-25].
[16] [Doc. No. 24-1, p. 1].

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc*., 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). No genuine dispute as to a material fact exists when a party fails "to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Louisiana Merchant Liability Act R.S. 9:2800.6

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. La. R.S. 9:2800.6 "governs negligence claims brought against merchants for accidents caused by a condition existing on or in the merchant's premises." *Davis v. Cheema, Inc.*, 171 So. 3d 984, 988 (La. App. 4 Cir. 5/22/15). This act states:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. R.S. 9:2800.6.

In sum, La. R.S. 9:2800.6 requires the plaintiff to prove: (1) a condition existed that presented an unreasonable risk of harm and that risk of harm was reasonably foreseeable; (2) the merchant either created the condition or had actual or constructive notice of the condition; and (3) the merchant failed to exercise reasonable care. If the plaintiff fails to prove any one of those three elements, the merchant is not liable. *White v. Wal-Mart Stores, Inc*., 699 So. 2d 1081, 1084 (La. 9/9/97). Accordingly, a genuine dispute as to a material fact must exist for each of these elements for Brass's claim to survive summary judgment.

To begin, the Court must determine what allegedly dangerous condition existed. Wal-Mart argues that the only condition at issue is the cardboard because Brass has not asserted the condition of the floor caused her injuries. In fact, the majority of Brass's motion focuses on the presence of the cardboard. Brass refers to the "wear and tear" on the floor to support her argument that Wal-Mart had constructive notice of the cardboard.[17] Yet, Brass then also asserts that whether the condition on the floor was its own unreasonably dangerous condition is a material fact in dispute that precludes summary judgment.[18] The Court ultimately does not agree with this proposition.

Courts adopted a risk/utility balancing test to determine whether a condition was unreasonably dangerous. The test is as follows: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Farrell v. Circle K Stores, Inc*. 359 So.3d 467, 474 (La. 2023). "If the application of the risk/utility balancing test results in a determination that the complained of hazard is not an unreasonably dangerous condition, a defendant is not liable because there was no duty breached." *Id*. at 478. "Summary judgment, based

---

[17] [Doc. No. 28, p. 8].
[18] [Doc. No. 28-4, ¶ 4-5].

on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous." *Id.* "The vice or defect must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary case under the circumstances." *Milton v. E & M Oil Co.*, 47 So. 3d 1091, 1095 (La. App. 2 Cir. 9/22/10).

Brass provided the Court with photographs of the floor, as demonstrated below.

[19]

Brass also testified that the cardboard was "over a hole" or "[s]ome sprinkle or something they had down there … [t]hey was covering it up with the cardboard."[20] However, Brass's proffered evidence does not demonstrate an unreasonably dangerous condition.

Certainly, there does not appear to be any utility to the floor being in this condition, and Brass's activities at the time of her injury were not inherently dangerous. Where Brass's claim

---

[19] [Doc. No. 28-3, p. 8].
[20] [Doc. No. 28-1, Deposition of Florence Brass, p. 29, 10-15]; [Doc. No. 28-1, Deposition of Florence Brass, p. 29, 23-25, p. 30, 1].

6

falters is that the Court knows nothing about the cost of preventing the harm (i.e., replacing the floor in this area or placing signs in the area). It also does not appear that the likelihood and magnitude of harm are great. While the condition of the floor may have been obvious, it does not appear to be dangerous. For example, the Court knows nothing about the supposed depth of the hole because the photos only appear to show cosmetic damage on the floor. Brass's testimony additionally describes the area as both a hole and a sprinkle, making the extent of such a depression unclear. Accordingly, even assuming a dip exists as Brass alleges, such a dip in the floor does not appear unreasonably dangerous. Certainly, a depression or hole in the floor could be unreasonably dangerous. But, with the facts present before the Court, reasonable minds would agree that this condition was not unreasonably dangerous, especially when it does not appear that others, including Brass herself, ever fell because of the depression.

Further, even assuming the condition of the floor is unreasonably dangerous, the floor is not the condition that allegedly caused Brass's injuries. A defendant must have "either created or had actual or constructive notice of the condition *which caused the damage*, prior to the occurrence." La. R.S. 9:2800.6(B)(2) (emphasis added). Here, as Brass repeatedly testified, she tripped over the edge of the cardboard.[21] She references the alleged hole in the floor only when describing why she believes the cardboard was in the aisle.[22] Even Brass's complaint posits that the cardboard was the legal and factual cause of her injuries, not the condition of the floor supposedly under the cardboard.[23] Accordingly, Brass asserted that the cardboard was the condition that caused her injury, not the alleged depression on the floor. A defendant, such as Wal-

---

[21] [Doc. No. 28-1, Deposition of Florence Brass, p. 22, 19-25, p. 23, 1-5]; [Doc. No. 28-1, Deposition of Florence Brass, p. 24, 17-22]; [Doc. No. 28-1, Deposition of Florence Brass, p. 23, 12-20].
[22] [Doc. No. 28-1, Deposition of Florence Brass, p. 29, 10-15]; [Doc. No. 28-1, Deposition of Florence Brass, p. 29, 23-25, p. 30, 1].
[23] [Doc. No. 1-1, p. 4].

Mart, must have notice of the condition that caused the damage and not just any potentially unreasonably dangerous condition. As such, Brass cannot meet her burden on summary judgment unless she demonstrates Wal-Mart had constructive notice of the cardboard. Brass's reliance on the condition of the floor as a means to trump Wal-Mart's summary judgment motion is thus misplaced.

Having determined the condition of the floor is neither an unreasonably dangerous condition nor a cause of Brass's alleged injuries, the Court now turns to the presence of the cardboard. In its Motion, Wal-Mart maintains Brass cannot prove that Wal-Mart either created or had actual or constructive notice of the cardboard on the floor.[24] Conversely, Brass urges that Wal-Mart had constructive notice.[25] Ultimately, the Court agrees with Wal-Mart. Based on the factual record before the Court, Brass cannot prove Wal-Mart created the condition or had actual or constructive notice of this condition. Accordingly, and for the reasons set forth below, Wal-Mart's motion is **GRANTED**.

First, Brass cannot establish Wal-Mart created the condition by placing the cardboard in the aisle. In its Motion, Wal-Mart points to the lack of testimony or evidence regarding how the cardboard ended up in the aisle. Brass herself testified that she had no idea how the cardboard got to the aisle or who, if anyone, may have placed it in the aisle.[26] More specifically, Brass produced no evidence that a Wal-Mart employee or representative placed the cardboard in the aisle. Instead, Brass only offered the Court speculation as to the origin of the cardboard. The Court ultimately does not agree that Brass provided sufficient evidence to survive summary judgment on the issue of actual notice.

---

[24] [Doc. No. 24-1, p. 1].
[25] [Doc. No. 28, p. 2-3].
[26] [Doc. No. 28-1, Deposition of Florence Brass, p. 30, 23-25].

A plaintiff cannot rely on mere speculation to establish a defendant created an unreasonably dangerous condition. *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330-31 (5th Cir. 2007). In *Bagley*, the plaintiff slipped and fell in a puddle of "meat blood." *Id*. at 329-330. However, the plaintiff did not provide the court with evidence as to how the liquid ended up on the floor. *Id*. at 330. She relied heavily on the testimony from an employee that the liquid likely leaked from the bottom of a customer's buggy. *Id*. The Court did not find this evidence sufficient, stating "even if it were sufficient evidence for a jury to find that the liquid came from a cart, it is yet another step to show Albertson's responsibility … No reasonable jury could find that Bagley has presented sufficient evidence to demonstrate that Albertson's created a leak." *Id*. at 330-31.

The evidence of Brass here is similarly speculative. Brass's evidence demonstrates that the floor had cosmetic damage and that cardboard was found in that area. She then asserts that, because the floor had cosmetic damage, the most likely explanation for the cardboard being there is that Wal-Mart placed the cardboard over the damaged area.[27] But Brass expressly testified that she does not know who, if anyone, placed the cardboard in the aisle.[28] As such, this statement is nothing more than speculation as to how the cardboard ended up in the aisle. While Brass may believe Wal-Mart placed the cardboard in the aisle, her mere speculation as to how this condition was created is not enough to survive Wal-Mart's motion for summary judgment on this issue. For similar reasons, Brass has also not established Wal-Mart had actual notice of the condition. She has not pointed to any testimony or other evidence that demonstrates Wal-Mart received actual notice of this condition.

The Court now turns to whether Wal-Mart had constructive notice. Wal-Mart argues that Brass has not produced any positive evidence establishing that the condition existed prior to

---

[27] [Doc. No. 28, p. 8].
[28] [Doc. No. 28-1, Deposition of Florence Brass, p. 30, 23-25].

Brass's fall.[29] Conversely, Brass asserts that the Court can surmise, based on the condition of the floor under the cardboard, that the cardboard must have been in the area for some period of time, thus establishing constructive notice.[30] Brass relies on circumstantial evidence because neither she nor any other witness saw the cardboard at any point prior to her fall. Because the Court does not agree that Brass's argument rises to a level beyond mere speculation, Brass cannot meet her burden of establishing constructive notice, and Wal-Mart's Motion must be **GRANTED**.

La. R.S. 9:2800.6(C)(1) defines constructive notice as follows:

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

Louisiana courts have consistently held that "constructive notice is plainly defined to include a mandatory temporal element." *White*, 699 So. 2d at 1082. A court cannot infer the existence of constructive notice "absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall." *Id*. at 1084. This positive showing must demonstrate "that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice." *Id*. at 1082. Courts have not imposed a "bright line time period", and the determination of whether a time period is sufficient to discover a condition is inherently factual. *Id*. at 1084. However, the plaintiff must still "prove the condition existed for some time period prior to the fall" to survive summary judgment. *Id*. at 1084-85.

---

[29] [Doc. No. 24-1, p. 6].
[30] [Doc. No. 24, p. 8].

In *Babin v. Winn-Dixie Louisiana, Inc*., 764 So. 2d 37, 40 (La. 6/30/00), the Louisiana Supreme Court found that the plaintiff's evidence consisted only of speculation, and he could not make the required positive showing for constructive notice. The plaintiff in this case alleged he slipped on toothpick boxes. *Id*. at 38. The defendant presented evidence that its employee inspected the area approximately ten minutes before the plaintiff fell and did not observe any toothpick boxes at that time. *Id*. at 40. The Louisiana Supreme Court ultimately held that, "[d]espite his speculation that the condition may have existed for some time period prior to his fall, plaintiff is clearly unable to make a positive showing." *Id*. at 40. *See also Robinson v. Brookshires #26*, 769 So. 2d 639, 642 (La. App. 2 Cir. 8/25/00) (stating that "[w]hat Babin appears to require of a plaintiff … is to come forth with evidence that shows how long the condition existed before the accident").

Further, in *Kennedy v. Wal-Mart Stores, Inc*., 733 So. 2d 1188, 1191 (La. 4/13/99), the Louisiana Supreme Court again did not allow the plaintiff to rely on circumstantial evidence. In this slip and fall 'rainy day' case, the plaintiff presented evidence "showing that the general area where he fell was within view of a customer service podium and that it was raining on the evening in question." *Id*. at 1191. The plaintiff did not present any evidence as to how long the water had been on the floor and instead relied on a circumstantial inference that water must have been present, and in view of Wal-Mart employees, because it had been raining earlier that day. *Id*. The court disagreed and found that the plaintiff could not establish constructive notice. *Id*.

Courts do allow plaintiffs to rely on circumstantial evidence in some cases. *See Fountain v. Wal-Mart Stores, Inc*., 297 So. 3d 100, 106 (La. App. 3 Cir. 3/18/20) (stating that "[p]roof of the temporal element of La.R.S. 9:2800.6 may be made by both direct and circumstantial evidence"). *See also Sheffie v. Wal-Mart Louisiana LLC*, 134 So. 3d 80, 84 (La. App. 5 Cir. 2/26/14), *writ denied*, 141 So. 3d 813 (La. 6/20/14). For example, in *Sheffie*, the defendant did not

11

dispute that water was present in the area where plaintiff fell. *Id*. at 82. The plaintiff presented a twenty-two-minute surveillance video to establish constructive notice. *Id*. at 84. This video did not show liquid being spilled at any point. *Id*. Additionally, five employees walked by the area "and did not appear to look for any hazardous conditions as trained." *Id*. The Louisiana Supreme Court ultimately decided that this video created a genuine dispute as to constructive notice. *Id. See also Beggs v. Harrah's New Orleans Casino*, 158 So. 3d 917, 923-24 (La. App. 4 Cir. 1/21/15) (finding that numerous statements regarding the presence of water in the hours before the fall and the lack of evidence regarding any clean-up constituted sufficient circumstantial evidence of constructive notice); *Bagley*, 492 F.3d at 331 (inferring constructive notice because testimony indicated the liquid came from a shopper's cart and the aisle was empty when plaintiff fell, supporting "a reasonable inference that the other cart had sufficient time to clear the aisle, implying the passage of 'some period of time'"); *Davenport v. Albertson's, Inc.*, 774 So. 2d 340 (La. App. 3 Cir. 12/6/00), *writ denied*, 788 So. 2d 427 (La. 2001) (finding constructive notice where plaintiff produced photographs and affidavits indicating that there were "toys and other objects on the toy aisle since the date of his accident, on the same day of the week, and at the approximate time of his fall").

Brass specifically relies on a series of 'rainy day" cases in which Louisiana courts inferred constructive notice when the plaintiff slipped in water on a rainy day with high foot traffic inside the store. For example, in *Bassett v. Toys "R" Us Delaware, Inc.*, 836 So. 2d 465, 468 (La. App. 2 Cir. 12/30/02), *writ denied sub nom. Bassett v. Toys "R" Us Delaware, Inc.*, 842 So. 2d 408 (La. 4/25/03), the plaintiff slipped in rainwater in a toy store on "one of the busiest shopping days of the year." The court stated that "the factfinder can reasonably infer from circumstantial evidence that it is more probable than not that the condition existed for such time prior to the accident that

it should have been discovered and corrected." *Id*. at 469. In that case, the Court noted that an employee knew it was raining and "that water was being tracked into the store and that precautionary actions were necessary." *Id*. Accordingly, the court found "there is a reasonable factual basis for the jury's conclusion that the hazardous condition existed for such a period of time that it would have been discovered had the merchant exercised reasonable care." *Id*. *See also Bourgeois v. AIG Ins. Co.*, No. CIV.A. 08-759, 2009 WL 1033780, at *4 (E.D. La. Apr. 16, 2009) (noting that "[c]onstructive knowledge can be found in cases in which the store manager knew it was raining, knew it was a particularly busy shopping day, and knew that rain water would thus be tracked into the store to create a hazardous condition"); *Oalmann v. K-Mart Corp.*, 630 So. 2d 911, 912-13 (La. Ct. App. 1993), *writ denied*, 634 So. 2d 859 (La. 1994) (inferring constructive notice where it was raining heavily and defendant should have known the floor would become slippery in a short period of time).

Again, Brass did not see the cardboard on the floor prior to her fall.[31] Nor have any witnesses testified that the cardboard was on the floor prior to her fall. Brass thus relies on this line of 'rainy day' cases to urge the Court to infer constructive notice. More specifically, she argues that the condition of the floor existed prior to the accident because that condition could not be "created overnight."[32] She then asserts that the most likely explanation for the cardboard being in the aisle is that it was being used to cover the condition of the floor.[33] Brass thus asks the Court to infer that, because the floor must have existed in that condition for some time, the cardboard must have also been present for some period of time prior to the accident.

---

[31] [Doc. No. 28-1, Deposition of Florence Brass, p. 30, 19-22].
[32] [Doc. No. 28, p. 8].
[33] [Doc. No. 28, p. 8].

The Court finds that such an inference is not warranted in this case. The inferences in the 'rainy day' cases were reasonable inferences. On rainy days, customers routinely track in water, and employees are likely on guard that customers may bring rainwater inside and that slippery conditions may arise quickly. Thus, when a customer slips and falls in a puddle of rainwater in a store on a busy day, a factfinder may infer that a customer likely tracked that water inside, leading to a conclusion that the puddle was present for a period of time prior to the fall. Such inferences are reasonable when the employees are aware of the potentially dangerous conditions, as was the case in both *Bassett* and *Bourgeois.* Further, in *Sheffie*, the inference was reasonable because the defendant admitted to the existence of water in the area where the plaintiff fell, and the surveillance footage established both that employees were in the area and that the water had been spilled prior to the beginning of the footage. *Sheffie,* 134 So. 3d at 82-84. Finally, in *Bagley*, the factfinder could reasonably infer the spill existed for some period of time prior to the fall because (1) the spill came from a customer's cart and (2) no customer was present in the aisle when plaintiff entered it. *Bagley*, 492 F.3d at 331

In all those cases, a clear link existed between the unreasonably dangerous condition and some other condition that existed prior to the plaintiff's fall. Put differently, customers routinely tracking rainwater inside is reasonably related to a puddle being formed where those customers go inside the store, and a customer's leaking cart is reasonably related to the existence of a puddle in an aisle where that customer recently shopped. A factfinder could thus infer that such conditions indicated the unreasonably dangerous condition existed before the plaintiff's fall. Conversely, no such reasonable inference exists here. A reasonable factfinder would not look at the condition on the floor and then reasonably and rationally conclude that the cardboard must have been present because of that condition. While Brass may believe the most likely explanation for the cardboard

is that Wal-Mart used it to cover the condition on the floor, such belief is nothing more than mere speculation. Mere speculation is not enough to survive a motion for summary judgment on this issue.

Accordingly, Brass cannot meet her burden of establishing constructive notice. Because Brass cannot satisfy the temporal element under La.R.S. 9:2800.6, Wal-Mart is entitled to summary judgment, and Wal-Mart's Motion is thus **GRANTED**.

### III.  CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Wal-Mart's Motion for Summary Judgment [Doc. No. 24] is **GRANTED**, and Plaintiff's claims against it are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 18th day of December 2023.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**